2011 Ark. 428

**Ira Gene VANKIRK, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–182.**

Supreme Court of Arkansas.

Oct. 13, 2011.

James Law Firm, by: William O. "Bill" James, Jr., and Lee D. Short, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Kathryn Henry, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Ira Gene Vankirk appeals from a judgment and commitment order sentencing him to three consecutive terms of life imprisonment as a result of Vankirk pleading guilty to three counts of rape. On appeal, Vankirk argues that the circuit court erred in allowing the State to introduce a videotaped interview of an investigator for the Arkansas State Police Crimes Against Children division asking the victim in this case about the rape allegations. Specifically, Vankirk asserts that he was denied his constitutional right to confront that witness. As Appellant was sentenced to life imprisonment and because this case presents an issue of first impression, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2) and (b)(1) (2011). For the reasons set forth herein, we reverse the order of the circuit court and remand this matter for resentencing.

The record reflects that Vankirk was charged by felony information on January 21, 2010, with three counts of rape, each occurring sometime between January 1, 2007, and August 31, 2009, in violation of Ark.Code Ann. § 5–14–103 (Repl.2009). The victim was Vankirk's niece, C.V., and at the time she reported the incident to authorities, she was twelve years of age.

Vankirk pleaded guilty to the three counts of rape and elected to be sentenced by a jury in a bifurcated proceeding. At the sentencing trial, held on December 4–5, 2010, the State moved to introduce a videotaped interview of the victim, C.V., with an investigator for the state police. In that video, C.V. stated that Vankirk had raped or fondled her for several years, beginning when she was five or six years of age. Vankirk objected to the playing of the video, arguing that it violated the rules of evidence and his constitutional right of confrontation. The circuit court overruled Vankirk's objection, finding that the rules of evidence did not apply in a sentencing proceeding and that the video constituted victim-impact evidence.

Vankirk testified during his sentencing trial. He stated that he was molested by his uncle for a period of years from the time he was five or six years old until he was fourteen or fifteen years old. He then admitted to having inappropriate sexual contact not only with C.V., but also with his nephew, M.G., and another niece, K.G. Thereafter, the jury returned a verdict, sentencing Vankirk as previously stated. This appeal followed.

The issue presented to this court is one of first impression: whether the constitutional right of confrontation applies where a defendant pleads guilty but chooses to be sentenced by a jury in a bifurcated proceeding. Vankirk argues that the right of confrontation should extend to sentencing and that the introduction of the videotaped interview of the victim in this case violated his rights of confrontation guaranteed by the Sixth Amendment to the United States

Constitution and article 2, section 10 of the Arkansas Constitution. Vankirk concedes that neither this court nor the United States Supreme Court has specifically held that the right of confrontation applies to sentencing, but he argues that there is nothing in the Sixth Amendment that limits the right of confrontation to a particular segment of the trial, as it grants a defendant the absolute right to confront his accusers at trial.

■ The State counters that Vankirk's argument is partially unpreserved, as he did not specifically mention the Arkansas Constitution when he objected to the introduction of the video. The State also argues that he waived any right of confrontation by pleading guilty to the charges against him. Alternatively, the State argues that Vankirk's argument fails on the merits because there was no violation of the Sixth Amendment's Confrontation Clause, as it does not apply to sentencing proceedings. Before turning to the merits of this argument, it is necessary to address the State's procedural issues.

First, there is no merit to the State's argument that Vankirk failed to properly preserve his argument under the state constitution. In *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the United States Supreme Court ruled that the right of confrontation provided to an accused by the Sixth Amendment to the United States Constitution is applicable to the states by the Fourteenth Amendment. This court has recognized that the wording of the Sixth Amendment Confrontation Clause is incorporated into our constitution's article 2, section 10. *Hale v. State,* 343 Ark. 62, 31 S.W.3d 850 (2000). There, this court explained that we interpret the Confrontation Clauses of the United States and Arkansas Constitutions to provide identical rights. Thus, there is no merit to the State's assertion that this court is

precluded from considering Vankirk's rights under our constitution.

■ Additionally, we must look at the State's assertion that Vankirk waived his rights under the Confrontation Clause. First, the State argues that under Arkansas law when a person pleads guilty, he waives the right to be confronted with the witnesses against him, except in capital cases where the death penalty is sought. In support of this argument, the State cites to Ark. R.Crim. P. 24.4 (2010), and *Pardue v. State,* 363 Ark. 567, 215 S.W.3d 650 (2005). Rule 24.4(e) does provide that a defendant who pleads guilty waives his right to a trial by jury and other corresponding trial rights, including the right to confront the witnesses against him. This rule does not contemplate the bifurcated procedure that allows one who pleads guilty to be sentenced by a jury and, thus, is not applicable. Likewise, this court's decision in *Pardue* is not controlling, as that case was concerned with a postconviction challenge to the validity of a plea and subsequent sentence and did not involve a Confrontation Clause challenge. Accordingly, we disagree with the State's assertion that Vankirk waived any right he may have had under the Confrontation Clause during the bifurcated sentencing trial.

■ Turning now to the merits of the argument before us, we must first note that this appeal raises a question of constitutional interpretation, which is subject to this court's de novo standard of review. *Seely v. State,* 373 Ark. 141, 282 S.W.3d 778 (2008).

A defendant's right to confront the witnesses against him is found in the Sixth Amendment to the United States Constitution and in article 2, section 10 of the Arkansas Constitution. Specifically, the Sixth Amendment to the Constitution provides that, "[i]n all criminal prosecutions,

the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In its landmark decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify, and the defendant previously had the opportunity to cross-examine the declarant. *Id.* The Court in *Crawford* explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused," and stated that "[t]he Sixth Amendment must be interpreted with this focus in mind." *Id.* at 50, 124 S.Ct. 1354.

In deciding *Crawford,* the Supreme Court announced that the analysis of whether an unavailable witness's hearsay statement is admissible turns on whether the statement is testimonial. *Id.* While the Court did not provide a comprehensive definition of "testimonial," this court addressed the issue in *Seely,* 373 Ark. 141, 152–53, 282 S.W.3d 778, 787–88, and explained that

> a more appropriate test should recognize the distinction between statements to government officials and statements to nonofficials. Moreover, the test should remain focused on the circumstances surrounding the statement and whether those circumstances objectively indicate that the primary purpose of the statement is to prove events relevant to criminal prosecution. Where a statement is made to a government official, it is presumptively testimonial, but the statement can be shown to be nontestimonial where the primary purpose of the statement is to obtain assistance in an emergency. *See Davis* [*v. Washing-*

*ton* ], 547 U.S. 813[, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ]. Where a statement is made to a nonofficial, it is presumptively nontestimonial, but can be shown to be testimonial if the primary purpose of the statement is to create evidence for use in court. *See, e.g., State v. Spencer* [339 Mont. 227], 169 P.3d 384, 388 (2007) ("In general, a declarant's statements are presumed testimonial if they are knowingly made to a police officer or ₍₆₎government agent. A statement is presumed non-testimonial, however, if the declarant had objective reason to believe that the statement served only to avert or mitigate an imminent or immediate danger and the agent receiving the statement lacked intent to create evidence. A statement made to a nongovernmental agent is non-testimonial unless the declarant had clear reason to believe that the statement would be used in court as substantive evidence against the defendant.") (citations and quotations omitted).

▪ Here, the State does not challenge whether the statements were testimonial in nature. But, we must first make such a determination because if they are not testimonial, there is no Confrontation Clause issue. The statements of the victim in the video were made to an investigator for the state police for the purpose of proving events relevant to a criminal investigation. As such, the statements were testimonial in nature, and the Confrontation Clause is thereby implicated.

▪ We turn now to the issue of the applicability of the Confrontation Clause to sentencing proceedings. In reviewing the issue, it is important to understand how sentencing in Arkansas works. In *Hill v. State,* 318 Ark. 408, 412, 887 S.W.2d 275, 277 (1994), this court explained as follows:

The Arkansas General Assembly in Act 535 of 1993 codified as Arkansas Code Ann. § 16–97–101, made changes in procedures governing jury trials by providing for separate consideration of guilt and sentencing, commonly referred to as "bifurcated proceedings." Under the bifurcation structure, a criminal trial is split into separate and distinct stages, the first of which involves the finding of guilt or innocence. In the event of a finding of guilt, further proceedings are held in which evidence may be presented prior to the setting of sentence. In establishing these bifurcated procedures, Section 2 of Act 535, codified as Ark.Code Ann. § 16–97–101(6), specifically provides that in the event of a plea of guilty, the defendant, with the agreement of the prosecution and the consent of the court, may be sentenced by a jury impaneled for the purpose of sentencing only. Thus, it is obvious that this new procedure differs considerably from the prior conduct of trials where the jury assessed both guilt and sentence during one proceeding.

The *Hill* court further recognized that pursuant to the new statutory scheme sentencing was "in essence, a trial in and of itself, in which new evidence may be submitted." *Id.* at 413, 887 S.W.2d at 277. As a result, the court concluded that the introduction of evidence during this stage must be governed by this court's rules of admissibility and exclusion in order for sentencing proceedings to pass constitutional muster. *Id.* Although *Hill* was concerned with the admissibility of evidence, its statement that sentencing procedures must satisfy constitutional standards cannot be ignored.

The State discounts the import of *Hill* and its progeny and, instead, focuses on the United States Supreme Court case of *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), to support its conclusion that the right of confrontation does not apply in sentencing proceedings. *Williams*, however, does not stand for that explicit proposition. In *Williams*, the Court considered a due-process challenge to New York's statutory scheme that allowed a trial judge to consider a myriad of evidence in determining what sentence to impose on a defendant. In fact, the Court framed the issue as a question relating "to the rules of evidence applicable to the manner in which a judge may obtain information to guide him in the imposition of sentence upon an already convicted defendant." *Id.* at 244, 69 S.Ct. 1079. In analyzing this issue the Court explained that

> [i]n a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all

the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Id.* at 246–47, 69 S.Ct. 1079 (footnote omitted). Ultimately, the Court concluded that New York's statutory scheme did not violate the Due Process Clause.

We find the State's reliance on *Williams* to be unpersuasive.[1] First, *Williams* involved a challenge under the Due Process Clause, not the Confrontation Clause. And, second, it was decided more than fifteen years prior to the *Pointer* decision that made the Confrontation Clause applicable to the states. Moreover, the issue as framed in *Williams* differs significantly from the one presented to us today in that *Williams* involved a judge and what information he could consider in sentencing; whereas, here, there was a jury impaneled to weigh evidence and impose punishment.

We believe that the federal district court's decision in *United States v. Mills,* 446 F.Supp.2d 1115 (C.D.Cal.2006), where the court concluded that the constitutional right to confrontation applies to both phases of federal-capital sentencing to be more persuasive. We are cognizant of the fact that *Mills* is a death-penalty case but find the court's analysis of the constitutional protections afforded during sentencing to be noteworthy nonetheless. In reaching this conclusion, the court reviewed the historical approach by a number of courts in assessing what rights a defendant enjoys during sentencing and holding that the Confrontation Clause forbids the admission of testimonial hearsay during the death-penalty phase of a case. Again, although *Mills* differs in that it is a death-penalty case, its rationale still applies to the facts of the case before us, as both *Mills* and the instant case involve sentencing by a jury. As the Court of Appeals of North Carolina reasoned, the focus in determining what constitutional protections apply should not be based on the available punishment. *State v. Hurt,* 208 N.C.App. 1, 702 S.E.2d 82 (2010). There, the court explained that

in determining the availability of constitutional *procedural* protections in specific contexts, the proper focus is on the essential characteristics of the *procedure* at issue and not on the incommensurate punitive measures different defendants may face at those otherwise similar stages.

*Id.* at 95.

Thus, we agree with the *Mills* court that a sentencing body's need for the admission of more evidence "does not sanction the admission of unconstitutional evidence against the defendant. 'Given the gravity of the decision to be made at the penalty phase, the [government] is not relieved of the obligation to observe fundamental constitutional guarantees.'" *Mills,* 446 F.Supp.2d at 1130 (quoting *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)).[2]

---

**1.** The Ninth Circuit, consistent with the other federal circuits, has not extended the right of confrontation to sentencing in noncapital cases where sentence is imposed by a judge. *See, e.g., United States v. Littlesun,* 444 F.3d 1196 (9th Cir.2006) (holding that *Williams,* 337 U.S. 241, 69 S.Ct. 1079, remained good law and, under its holding, any confrontation right did not extend to sentencing in a noncapital case where a judge imposed the sen-

tence). As we have already explained, we do not believe *Williams* is controlling in a case such as this one where the issue is whether the right of confrontation extends where a defendant elects to be sentenced by a jury; thus, *Littlesun* is of no guidance on the issue.

**2.** *See also State v. Rodriguez,* 754 N.W.2d 672 (Minn.2008) (holding that the right to confrontation applies in jury-sentencing trials,

A determination that the Confrontation Clause applies to sentencing is consistent with our recognition of other rights that are applicable at sentencing. As previously stated, the rules of evidence apply at sentencing. *Hill,* 318 Ark. 408, 887 S.W.2d 275. Similarly, we have held that the rules of discovery apply at sentencing. *Phillips v. State,* 321 Ark. 160, 900 S.W.2d 526 (1995). We have also held that a defendant has a Sixth Amendment right to counsel at sentencing, *see Smith v. State,* 329 Ark. 238, 947 S.W.2d 373 (1997), as well as a right to speedy sentencing. *See Jolly v. State,* 358 Ark. 180, 189 S.W.3d 40 (2004).

In sum, when we consider this court's recognition of the nature of sentencing as a separate proceeding, and we review the other rights afforded a defendant during the sentencing phase, we are convinced that the right of confrontation, guaranteed by both the Sixth Amendment and article 2, section 10, extends to Appellant's sentencing proceeding before a jury.[3] Before leaving this point, we note that the court of appeals in *Wallace v. State,* 2010 Ark. App. 706, 378 S.W.3d 269, held that the admission of testimony during sentencing about the appellant's disciplinary violations during a previous term of imprisonment did not violate the appellant's right to confrontation, as such a right had not been extended to sentencing and because the appellant had the opportunity to cross-examine the witness regarding the records. We hold that to the extent *Wallace* conflicts with this opinion, it is overruled.

Our inquiry does not end here, however. Any conclusion that Vankirk's right of confrontation was violated is subject to a harmless-error analysis. In *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) the United States Supreme Court held that a denial of the right to confront a witness may be harmless error. The Court said

> [w]hether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 684, 106 S.Ct. 1431. The test announced in *Van Arsdall* was adopted by this court in *Winfrey v. State,* 293 Ark. 342, 738 S.W.2d 391 (1987). Thus, this court must determine whether the error in admitting the videotaped statement was harmless. After reviewing the videotape and considering it in the context of the other evidence submitted during sentencing, we cannot say it was harmless.

Here, the video introduced at sentencing depicted a young victim recounting specific allegations of sexual abuse, including a statement that the abuse began occurring when she was five or six years old. This comment alone, which was uncorroborated and went unchallenged because Vankirk was not allowed to question C.V., was extremely prejudicial, particularly because the felony information filed against Vankirk alleged that the three rape incidents

---

noting that cross-examination is a core component of a defendant's right to a jury trial).

**3.** Such a conclusion is also in line with cases from our court of appeals acknowledging that the right of confrontation applies in revocation proceedings. *See Jones v. State,* 31 Ark. App. 23, 786 S.W.2d 851 (1990); *Goforth v. State,* 27 Ark.App. 150, 767 S.W.2d 537 (1989).

charges took place between January 1, 2007 and August 31, 2009. Moreover, it is clear to us that had the State actually produced C.V. to give victim-impact testimony during sentencing, |₁₂Vankirk would surely have been able to cross-examine her. Taking all these facts into consideration, we cannot say that the error in admitting the video was harmless.

Because the circuit court erred in admitting the videotaped interview of the victim and such error was not harmless, we reverse and remand for resentencing. Pursuant to Ark. Sup.Ct. R. 4–3(i) (2011), the record in this case has been reviewed for all other objections, motions, and requests by either party, which were decided adversely to Appellant, and no further prejudicial error was found.

Reversed and remanded.